BRIAN A. JOHNSON,

    Petitioner,

v.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,

    Respondent.

Case No. 2:16-cv-985
Judge Edmund A. Sargus, Jr.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition (ECF No. 1), Respondent's Return of Writ and Supplemental Memorandum in Support (ECF Nos. 22, 23), Petitioner's Reply (ECF No. 51), and the exhibits of the parties. For the reasons that follow, this action is **DISMISSED**. In addition, Petitioner's Motion to Request an Evidentiary Hearing (ECF No. 50) and his Motion to Expedite (ECF No. 57) are **DENIED** as moot.

## I. BACKGROUND

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} L.A. is a 56–year–old female who is developmentally disabled. L.A. has an I.Q. of 56 and a diagnosis of dependent personality disorder. At the time of these events, L.A. lived alone in a condo in the Abbeycross neighborhood of Westerville, Delaware County, Ohio. Although L.A. had some ability to live independently, she was closely supervised by her cousin who lived nearby and her caseworker from the Delaware County Board of D.D. Both of her parents are deceased. L.A. does not drive and is dependent upon others to manage her money and to help her meet her own basic needs. She regularly attends a workshop called "All R Friends" and has worked some part-time jobs at care facilities and in her cousin's office.

{¶ 3} Appellant's cousin has been L.A.'s closest caretaker since both of their mothers were killed in an automobile accident in 2008. L.A. was the sole survivor of that accident. L.A.'s cousin testified she is mentally similar to a five- to ten-year-old child.

{¶ 4} Evidence at trial established that between September 7 and September 9, 2013, L.A. observed appellant delivering newspapers in her neighborhood. L.A. testified appellant asked to come inside her condo and she allowed him to come in. Once inside, they entered one of the condo's three bedrooms which L.A. referred to as her dad's bedroom.

{¶ 5} L.A. testified she understood appellant wanted to have "sex" and she said no. She said he pushed her onto the bed and assaulted her. L.A. described digital penetration and intercourse with the aid of anatomically-correct drawings. L.A. said the sexual assault hurt and made a "mess" which she attempted to clean up. At trial she repeatedly said cleaning up the mess was a "mistake" because she later understood the police wanted the evidence.

{¶ 6} After the sexual assault, L.A. was scared to call police but called the security manager of the Columbus Dispatch to ask for help. The security manager told her to report the matter to the police and she did. Westerville detectives interviewed L.A. with the assistance of her case manager. L.A. became very upset when the detective asked her to explain what happened by role-playing. Her caseworker testified she "freaked" and became distraught. L.A. identified appellant as her attacker in a photo lineup and at trial.

{¶ 7} The Westerville police made contact with appellant, who worked his mother's paper route throughout L.A.'s neighborhood. Appellant admitted entering L.A.'s condo and admitted digital penetration, although he denied intercourse. He told police L.A. "seemed somewhat normal" but was "a little strange."

{¶ 8} Appellant was charged by indictmentFN1 upon one count of rape pursuant to R.C. 2907.02(A)(1)(c) [Count I]; one count of rape pursuant to R.C. 2907.02(A)(2) [Count II]; one count of rape pursuant to R.C. 2907.02(A)(1)(c) [Count III]; one count of rape pursuant to R.C. 2907.02(A)(2) [Count IV]; one count of sexual battery pursuant to R.C. 2907.03(A)(2) [Count V]; one count of sexual battery pursuant to R.C. 2907.03(A)(1) [Count VI]; one count of sexual battery pursuant to R.C. 2907.03(A)(2) [Count VII]; and one count of sexual battery pursuant to R.C. 2907.03(A)(1) [Count VIII]. Appellant entered pleas of not guilty.

FN1: An earlier indictment upon four counts of rape under case number 13 CR I 04 0169 was dismissed on February 26, 2014. All pleadings and bond in the 2013 case transferred to the subsequent indictment under case number 14 CR I 01 0019.

{¶ 9} Pursuant to the bill of particulars filed on February 5, 2014, the charges represented the following conduct:

Count I: vaginal penetration when victim's ability to consent was substantially impaired due to mental or physical condition.

Count II: vaginal penetration by force or threat of force.

Count III: digital penetration when victim's ability to consent was substantially impaired due to mental or physical condition.

Count IV: digital penetration by force or threat of force.

Count V: sexual battery by means of vaginal penetration when victim's ability to consent was substantially impaired due to mental or physical condition.

Count VI: sexual battery by means of vaginal penetration when offender coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.

Count VII: sexual battery by means of digital penetration when offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

Count VIII: sexual battery by means of digital penetration when offender coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.

{¶ 10} At a status conference on May 13, 2014, the trial court heard argument on several motions. No exhibits were admitted and no evidence was taken. Appellant's counsel argued in favor of admitting evidence that the fitted bed sheet taken as evidence from L.A.'s condo was swabbed by a forensic analyst and, apparently, found to contain D.N.A. of someone other than appellant. The trial court concluded the evidence was not admissible. Then the parties addressed the matter of the competency of L.A., who was not present for the conference:

[DEFENSE COUNSEL:] Judge, are you intending to do a competency hearing on the 601 on [the day of trial] I mean?

THE COURT: I wasn't. I wasn't.

[DEFENSE COUNSEL:] You were not?

THE COURT: Well, if she—

[DEFENSE COUNSEL:] Okay.

3

THE COURRT: Who wants it?

[PROSECUTOR:] She knows the difference between telling the truth and telling a lie out of an abundance of caution.

THE COURT: We'll have one then.

[DEFENSE COUNSEL:] I don't know that we necessarily need one. I've not talked with her, but I was just trying to figure out maybe.

[PROSECUTOR:] If you want to voir dire her right before we go on. I don't think there's going to be a problem with the competency issue. The Court has a copy of the disc.

* * * *.

THE COURT: * * * *.

In light of what the evidence will be, we probably need to voir dire her outside the presence of the jury and we should not, we should do it before we swear the jury—

[PROSECUTOR:] I would agree.

[DEFENSE COUNSEL:] Okay.

THE COURT:—because we don't want jeopardy to attach. * * * *.

* * * *.

THE COURT: All right, we'll have the competency hearing the first thing in the morning.

* * * *.

{¶ 11} The record is then devoid of any further mention of a competency hearing. No competency hearing was requested or held before trial or prior to the testimony of L.A.

{¶ 12} The case proceeded to trial by jury. Appellant moved for a judgment of acquittal at the close of appellee's evidence. In response, the trial court amended Counts III, IV, VII, and VIII to attempted offenses. Appellant was thereupon found guilty as charged.

{¶ 13} At sentencing, the trial court found Counts I, II, V, and VI merge, and Counts III, IV, VII, and VIII merge. The trial court sentenced appellant upon Counts II and IV to an aggregate prison term of 14 years. Appellant now appeals from the judgment entry of conviction and sentence.

{¶ 15} Appellant raises three assignments of error:

ASSIGNMENTS OF ERROR

{¶ 16} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO CONDUCT A VOIR DIRE COMPETENCY EXAMINATION OF THE ALLEGED VICTIM WHEN IT WAS INFORMED THAT THE VICTIM IN THIS CASE SUFFERED FROM MENTAL RETARDATION AND CO–DEPENDENCY PERSONALITY DISORDER."

{¶ 17} "II. APPELLANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, AND SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED."

{¶ 18} "III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT RULED THAT DNA EVIDENCE OF ANOTHER INDIVIDUAL FOUND AT THE LOCATION OF THE ALLEGED OFFENSE WAS INADMISSIBLE UNDER OHIO'S RAPE SHIELD STATUTE."

*State v. Johnson*, No. 14CA070039, 2015 WL 1960568, at *1-3 (Ohio App. 5th Dist. Apr. 29, 2015). On April 29, 2015, the appellate court affirmed the judgment of the trial court. *Id.* On October 28, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Johnson*, 143 Ohio St.3d 1501 (2015).

On July 16, 2015, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). Petitioner asserted that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal claims of prosecutorial misconduct, judicial misconduct, and the denial of the effective assistance of trial counsel. (ECF No. 22-2, PAGEID # 1080-81.) On December 4, 2015, the appellate court denied the Rule 26(B) application. (*Judgment Entry*, ECF No. 22-2, PAGEID # 1078.) On March 23, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (PAGEID # 1138.)

Petitioner also pursued post-conviction relief.  The Ohio Court of Appeals summarized those proceedings as follows:

{¶ 4} On February 26, 2015, appellant filed a petition for postconviction relief focusing on ineffective assistance of counsel. By a thorough and lengthy judgment entry filed March 12, 2015, the trial court denied the petition without a hearing. Appellant filed an appeal which this court dismissed for unauthorized practice of law. *State v. Johnson*, 5th Dist. Delaware No. 15 CAA 03 0027.[1]

{¶ 5} On October 21, 2015, appellant filed another petition for postconviction relief which the trial court denied the next day as a successive petition not meeting the requirements of R.C. 2953.23(A)(1). Appellant filed an appeal and this court affirmed the trial court's decision. *State v. Johnson*, 5th Dist. Delaware No. 15 CAA 11 0092, 2016–Ohio–1213, appeal not accepted, 146 Ohio St.3d 1471, 2016–Ohio–5108.

{¶ 6} On November 25, 2015, appellant moved for appointment of counsel which the trial court denied on November 30, 2015. Appellant filed an appeal which this court dismissed for want of prosecution. *State v. Johnson*, 5th Dist. Delaware No. 15 CAA 12 0096.

{¶ 7} On March 3, 2016, appellant filed a motion for resentencing which the trial court denied on the same day. Appellant filed an appeal and this court affirmed the trial court's decision, but remanded the matter to the trial court to issue a nunc pro tunc sentencing entry stating the rape sentences are mandatory. *State v. Johnson*, 5th Dist. Delaware No. 16CAA030011, 2016–Ohio–4617. Appellant did not appeal to the Supreme Court of Ohio. Instead, appellant filed a motion for reconsideration which this court denied on October 20, 2016.

{¶ 8} On June 24, 2016, the trial court issued a nunc pro tunc judgment entry as directed by this court.

{¶ 9} On July 21, 2016, appellant filed a second motion for resentencing which the trial court denied the next day.

{¶ 10} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 11} "DEFENDANT–APPELLANT'S FUNDAMENTAL AND SUBSTANTIAL RIGHT TO PROCEDURAL DUE PROCESS AND EQUAL PROTECTION OF THE LAWS, GUARANTEED BY THE 14TH

---

[1] Petitioner did not file an appeal to the Ohio Supreme Court.

AMENDMENT TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 2 & 16 OF THE OHIO CONSTITUTION, WAS VIOLATED; WHEN THE TRIAL COURT [FAILED TO COMPLY WITH STATUTORILY MANDATED TERMS AND RULE REQUIREMENTS] PURSUANT TO CRIM.R. 32(B)(3)(a), (b); CRIM.R.32(C); R.C. 120.05(A); OHIO ADMINISTRATIVE CODE RULE: 120–1–03; 120–1–05; RESULTING IN [JURISDICTIONAL, PROCEDURAL, PREJUDICIAL, AND REVERSIBLE PLAIN ERROR], THEREBY, RENDERING HIS [SENTENCE & SENTENCING ENTRY], [UNAUTHORIZED BY LAW], [CONTRARY TO LAW], [A NULLITY AND VOID IN–PART]."

II

{¶ 12} "DEFENDANT–APPELLANT'S FUNDAMENTAL AND SUBSTANTIAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED BY THE 6TH AMENDMENT, UNDER THE EQUAL PROTECTION AND DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION 2, 10 & 16, OF THE OHIO CONSTITUTION, WAS VIOLATED; WHEN TRIAL COUNSEL FAILED TO [OBJECT] TO THE COURT'S VOID IMPOSITION OF SENTENCE PURSUANT TO CRIM.R.44 (A); CRIM.R. 32(B)(3)(a),(b) AS WELL AS APPELLATE COUNSEL'S FAILURE TO RAISE THE ISSUE ON APPEAL; ALSO TRIAL COUNSEL FAILED TO COMPLY WITH R.C. 120.05(A), (B); FAILING TO [INVESTIGATE] AND SUBMIT A FINANCIAL DISCLOSURE/AFFIDAVIT OF INDIGENCY FORM TO THE COURT FOR DETERMINATION OF INDIGENCY AND POSSIBLE WAIVER OF COURT COSTS, AS WELL AS APPELLANT COUNSELS FAILURE TO RAISE THIS ISSUE ON APPEAL; TRIAL COUNSEL ALSO, [FAILED TO INFORM, CONSULT, ADVISE, AND EXPLAIN] THESE CIRCUMSTANCES AS A POSSIBLE OUTCOME OR PENALTY IN THE EVENT OF CONVICTION TO APPELLANT, DURING [PRETRIAL PLEA NEGOTIATIONS]; THUS, RENDERING [BOTH] COUNSEL'S PERFORMANCE CONSTITUTIONALLY DEFICIENT, BELOW AN OBJECTIVE STANDARD OF REASONABLENESS, THEREBY, RESULTING IN A [VOIDABLE CONVICTION] IN THIS REGARD, AND A [SUBSTANTIAL PREJUDICE SUFFERED]."

*State v. Johnson*, No. 16 CAA 08 0033, 2016 WL 6673536, at *1-2 (Ohio App. 5th Dist. Nov. 10, 2016). On November 10, 2016, the appellate court affirmed the trial court's dismissal of the action as a successive post-conviction action and barred under Ohio's doctrine of *res judicata*. *Id.* On June 21, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Johnson*, 149 Ohio St.3d 1433 (2017).

On August 23, 2016, Petitioner filed a motion to strike and a third motion for re-sentencing. (ECF No. 22-6, PAGEID # 2963, 2995.) The trial court denied those motions. (PAGEID # 3049.) Petitioner filed a timely appeal, asserting as follows:

{¶ 15} "I. WAS THE DEFENDANT–APPELLANT'S FUNDAMENTAL AND SUBSTANTIVE RIGHTS TO SUBSTANTIVE, PROCEDURAL DUE PROCESS AND EQUAL PROTECTION OF THE LAWS, GUARANTEED BY THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION 2 & 16 OF THE OHIO CONSTITUTION, [VIOLATED]? WHEN THE TRIAL COURT FAILED TO COMPLY WITH R.C. 2929.19(B)(2)(A), (B); AND AS A RESULT OF APPEAL ADJUDICATION IN CASE NO. 16–CAA–03–0011, THE APPEAL COURT FAILED TO REVIEW THE MERITS UNDER A [CONTRARY TO LAW AND PLAIN ERROR] ANALYSIS PURSUANT TO R.C. 2953.08(G)(2)(b), AND CRIM.R. 52(B); THUS, DID THE TRIAL AND APPELLATE COURT COMMIT PLAIN AND MANIFEST ERROR WHEN IT FAILED TO SUA SPONTE RAISE QUESTION TO ITS JURISDICTION TO HEAR THE APPEAL AND ISSUE A NUNC PRO TUNC CORRECTION SENTENCING ENTRY ON THE MATTER PURSUANT TO R.C. 2929.19(B)(7), THUS, RAISING A CONSTITUTIONAL QUESTION AND CHALLENGE ON THIS MERIT; THEREFORE, IS SECTION (B)(&7) UNCONSTITUTIONAL IN PART, AND APPELLANT'S SENTENCE VOID IN PART; THEREBY, AS A RESULT WAS THE DEFENDANT–APPELLANT PREJUDICED BY THESE ERRORS AS CITED BY HIS INEFFECTIVE CLAIM IN THIS REGARD?" [brackets in original] [sic throughout].

{¶ 16} "II. WAS THE DEFENDANT–APPELLANT'S FUNDAMENTAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED BY THE 6TH AMENDMENT UNDER THE EQUAL PROTECTION AND DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION 2, 10 & 16 OF THE OHIO CONSTITUTION, [VIOLATED]? WHEN TRIAL COURT FAILED TO OBJECT TO THE TRIAL COURTS FAILURE TO COMPLY WITH R.C. 2929.19(B)(2)(a); AND COUNSEL'S FAILURE TO CHALLENGE THE CONSTITUTIONALITY AND SEVERABILITY OF SECTION (B)(7); IN ADDITION, DID COUNSEL'S FAILURE TO CONSULT THE DEFENDANT–APPELLANT ON THE POSSIBLE MANDATORY PENALTY IN THE EVENT OF CONVICTION DURING PLEA NEGOTIATIONS RENDER HIS CONVICTION VOIDABLE WITH A SUBSTANTIAL PREJUDICE SUFFERED BY APPELLANT?" [brackets in original] [sic throughout].

*State v. Johnson*, No. 16CAA080037, 2016 WL 8465806, at *2 (Ohio App. 5th Dist. Dec. 16, 2016). On December 16, 2016, the appellate court affirmed the judgment of the trial

court. *Id.* On July 26, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Johnson*, 150 Ohio St.3d 1410 (2017).

On October 3, 2016, Appellant filed a first motion for relief from judgment or order pursuant to Ohio Civil Rule 60(B). The trial court denied the motion via Judgment Entry of October 4, 2016.

{¶ 16} On October 12, 2016, Appellant filed a second motion for relief from judgment or order pursuant to Ohio Civil Rule 60(B). The motion was denied via Judgment Entry of October 13, 2016.

{¶ 17} In Appellate Number 16CAA100045, Appellant filed an appeal from the October 4, 2016 judgment entry denying his first motion for relief from judgment or order pursuant to Ohio Civil Rule 60(B).

{¶ 18} In Appellate Number 16CAA100046, Appellant filed an appeal from the October 13, 2016 Judgment Entry.

{¶ 19} Both appeals were assigned to this Court's accelerated calendar. Pursuant to Ohio Appellate Rule 11.1(E),

(E) Determination and Judgment on Appeal. The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form.

The decision may be by judgment entry in which case it will not be published in any form. (See Form 3, Appendix of Forms.)

Ohio App. R. 11.1

{¶ 20} In Case No. 16CAA100045, Appellant assigns as error,

DEFENDANT–APPELLANT'S FUNDAMENTAL & SUBSTANTIAL RIGHT TO A FAIR TRIAL UNDER EQUAL PROTECTION, SUBSTANTIVE AND PROCEDURAL DUE PROCESS OF THE LAW, GUARANTEED BY THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION 2 & 16 OF THE OHIO CONSTITUTION, WAS VIOLATED; WHEN THE TRIAL COURT FAILED TO COMPLY WITH STATUTORY PRIVISIONS [SIC], CONTRARY TO OHIO EVID. R. 104(A); EVID. R. 601(A); R.C. 2317.01; THEREBY, FAILING TO SUA SPONTE CHECK THE COMPETENCY OF A PRESUMED MENTALLY INCOMPETENT & DISABLED ALLEGED VICTIM WITNESS PRIOR TO RECEIVING HER TESTIMONY AT TRIAL; THEREFORE, THE COURT LACKED THE JURISDICITON TO RECEIVE THE TESTIMONY,

RENDERING IT INADMISSIBLE AND APPELLANT'S CONVICTION VOID AB INITIO; THUS, RESULTING IN FRAUD UPON THE COURT, MANIFEST, PLAIN PREJUDICIAL ERROR & A MISCARRIAGE OF JUSTICE.

{¶ 21} In Case No.2016CAA100046, Appellant assigns as error,

*3 DEFENDANT–APPELLANT'S FUNDAMENTAL & SUBSTANTIAL RIGHT TO A[SIC] IMPARTIAL JURY AND FAIR TRIAL UNDER EQUAL PROTECTION, SUBSTANTIVE AND PROCEDURAL DUE PROCESS OF THE LAW, GUARANTEED BY THE 6TH & 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION; WAS VIOLATED; WHEN THE TRIAL COURT FAILED TO SUA SPONTE VOIR DIRE THE JURY ON THE BASIS OF RACIAL PREJUDICE OR BIAS, RESULTING IN PLAIN PREJUDICIAL ERROR & A MISCARRIAGE OF JUSTICE.

*State v. Johnson*, Nos. 16 CAA 100045, 16 CAA 100046, 2017 WL 121840, at *1-3 (Ohio App. 5th Dist. Jan. 10, 2017). On January 10, 2017, the appellate court again affirmed the judgment of the trial court, finding Petitioner's claims to be barred under the doctrine of *res judicata. Id.* On July 26, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Johnson,* 150 Ohio St.3d 1410 (2017).

On October 13, 2016, proceeding without counsel, Petitioner filed this habeas corpus petition. He asserts that he was denied a fair trial based on judicial misconduct due to the trial court's use of racial epithets at a pre-trial hearing (claim one); that he was denied the effective assistance of counsel because his attorney failed to object or motion to disqualify the trial judge (claim two); that he was denied a fair trial because the trial court failed to *voir dire* the jury on racial prejudice and bias (claim three); that he was denied the right to an impartial jury and the effective assistance of counsel because his attorney failed to object or request the trial court to *voir dire* the jury on racial prejudice and bias (claim four); that he was denied a fair trial because the trial court failed to determine the competency of the alleged victim, resulting in fraud on the court (claim five); that he was denied a fair trial and the effective assistance of counsel because

his attorney failed to investigate or request the trial court to determine the competency of the alleged victim and failed to object or move to strike her testimony (claim six); that he was denied a fair trial due to prosecutorial misconduct based on perjured testimony (claim seven); that he was denied the right to confront witnesses and the effective assistance of counsel because his attorney failed to object to perjured testimony by the alleged victim, move for an in camera review of her testimony, or request a mistrial (claim eight); that he was denied a fair trial, the right to confrontation and compulsory process when the trial court ruled that DNA evidence of another individual was inadmissible under Ohio's rape shield law (claim nine); that he was denied a fair trial and the right to confrontation, compulsory process, and the effective assistance of counsel because his attorney failed to present testimony from a DNA expert (claim ten); that he was denied a fair trial, compulsory process, confrontation, and the effective assistance of counsel because his attorney failed to investigate or subpoena favorable witnesses and records, present an alibi defense, or consult with the Petitioner during pre-trial negotiations (claim eleven); that he was denied the effective assistance of counsel because his attorney failed to provide Petitioner with a copy of the entire case file or consult with him during plea negotiations (claim twelve); that the trial court failed to comply with Ohio's sentencing statutes (claim thirteen); that he was denied the effective assistance of counsel because his attorney failed to object to imposition of a void sentence or advise Petitioner of potential sentencing ramifications (claim fourteen); that he was denied due process and equal protection because the trial court failed to comply with Ohio law rendering his sentence void (claim fifteen); that he was denied the right to the effective assistance of counsel because his attorney failed to object to the trial court's imposition of a void sentence or submit a financial disclosure form for determination of Petitioner's indigent status (claim sixteen); that he was denied due process because the trial and

appellate court failed to comply with O.R.C. § 2929.19(B)(7) (claim seventeen); and that he was denied the effective assistance of counsel because his attorney failed to challenge the constitutionality of his sentence or advise Petitioner of the potential mandatory penalty that he faced (claim eighteen).

It is the Respondent's position that Petitioner has procedurally defaulted these claims and that habeas corpus claim six lacks merit.

## II. PROCEDURAL DEFAULT

### A. Procedural Default Standards

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) *(per curiam)* (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas . . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the

course of the trial or the appeal before a federal court intervenes in the state criminal process. This requires the petitioner to present "the same claim under the same theory" to the state courts before raising it on federal habeas review. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the United States Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are procedurally defaulted.

To determine whether procedural default bars a habeas petitioner's claim, courts within the Sixth Circuit engage in a four-part test. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must determine whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes

(1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id*.

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). This is because before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." Id., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time

14

run'" so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

## B. Application

### 1. Failure to Raise Claims on Direct Appeal

Petitioner has procedurally defaulted most of his claims by failing to raise them on direct appeal. Specifically, Petitioner failed to raise habeas corpus claims one through four, seven, eight, ten, fourteen, fifteen, and sixteen on direct appeal, where he had the representation of new counsel.

Ohio's doctrine of *res judicata* precludes Petitioner from raising these claims now. "It is well-settled that '[c]laims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*.'" *Teitelbaum v. Turner*, No. 2:17-cv-583, 2018 WL 2046456, at *155 (S.D. Ohio May 2, 2018) (quoting *Hill v. Mitchell*, No. 1:98-cv-452, 2006 WL 2807017, at *43 (S.D. Ohio Sept. 27, 2006) (citing *State v. Perry*, 10 Ohio St.2d

175, 226 N.E.2d 104 (1967)). Petitioner violated the *res judicata* rule set forth in *Perry* when he failed to raise his claims on direct appeal, and, consequently, the first prong of the *Maupin* test is satisfied. Moreover, Ohio courts have consistently relied upon the doctrine of *res judicata* to refuse to review the merits of procedurally barred claims. *See, e.g., State v. Cole*, 2 Ohio St.3d 112 (1982). Further, the United States Court of Appeals for the Sixth Circuit has held that Ohio's doctrine of *res judicata* is an independent and adequate ground for denying federal habeas relief. *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Turning to *Maupin's* independence prong, under the circumstances presented here, Ohio's doctrine of *res judicata* does not rely on or otherwise implicate federal law. Accordingly, the undersigned finds that the first three *Maupin* factors are satisfied.

Petitioner attempted to present claim seven in the first instance in his appeal to the Ohio Supreme Court. (ECF No. 22-2, PAGEID # 1004). However, he did not thereby preserve this claim for review, as the Ohio Supreme Court does not ordinarily consider claims not raised in the appellate court below. *See Glenn v. Bobby*, No. 1:13-cv-128, 2013 WL 3421888, at *10 (N.D. Ohio July 8, 2013) (citing *State v. Jester*, 32 Ohio St.3d 147, 154 (1987)).

In addition, Petitioner raised claims three and four in his Second Motion for Relief from Judgment pursuant to Ohio Civil Rule 60(b). (ECF No. 22-7, PAGEID # 3671.) However, the appellate court explicitly refused to consider the merits of those claims as barred under the doctrine of *res judicata*, because these issues had been raised or could have been raised on direct appeal. (*See* PAGEID # 3976.) Petitioner also attempted to present claim ten in his first petition

16

for post-conviction relief. However, the trial court explicitly refused to address the merits of that claim as barred under Ohio's doctrine of *res judicata*:

> [D]efendant's fourth post-conviction claim focuses on his trial attorney's alleged failure to present testimony at trial from a DNA expert. Yet like all of the other claims in thepost-conviction petition, that claim is one that could have been raised in the direct appeal without the defendant's appellate counsel needing to look beyond the trial-court record. Testimony at the trial touched on the washing of bed sheets (page 248 of the trial transcript) and on the collection of sheets and underwear from the victim (pages 417 and 441 of the trial transcript), and in his closing argument the prosecutor noted that the State had presented "no fingerprints, DNA, [or] carpet fiber analysis" during the trial. (page 543 of the trial transcript). All of that information could readily have alerted the defendant's appellate counsel to any appropriate DNA-related ineffective-assistance claim. (I am at a loss, though, to understand what benefit a DNA expert might have provided to the defendant at trial, as there was no DNA evidence presented by the State at the trial linking the defendant to the crime or the crime scene.) In any event, no outside-the-record information was needed by defense counsel to raise that DNA-related ineffective assistance claim in the direct appeal.

(*Judgment Entry Denying the Defendant's 2/26/15 Post-Conviction Petition*, ECF No. 22-2, PAGEID # 1395.)[2] Again, therefore, Petitioner has failed to preserve claims three, four, and ten for review in these proceedings.

### 2. Failure to Object

In claim five, Petitioner asserts that he was denied a fair trial because the trial court failed to determine the alleged victim's competency. In claim nine, Petitioner asserts that he was denied a fair trial because the trial court refused to permit admission of certain DNA evidence under Ohio's Rape Shield Law. Petitioner raised both of the foregoing claims on direct appeal, but the appellate court reviewed his claims for plain error only, due to his failure to object:

> [A]ppellant argues the trial court abused its discretion in failing to conduct a voir dire competency examination of the victim despite evidence of her cognitive limitations. We disagree.

---

[2] The appellate court *sua sponte* dismissed Petitioner's appeal, because one "Uniqua Palmer," a non-attorney, signed it, but Petitioner did not. (*Judgment Entry*, ECF No. 22-3, PAGEID # 1449-50.)

{¶ 20} Pursuant to Ohio Evid.R. 601, "Every person is competent to be a witness except those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." See also R.C. 2317.01. "Of unsound mind" includes all forms of mental retardation. R.C. 1.02(C).

{¶ 21} The competency of a witness to testify at trial is a matter to be determined by the trial court, and absent an abuse of discretion, will not be disturbed on appeal. *State v. Richmond*, 1st Dist. Hamilton No. 824578, 1983 WL 5309, *1 (Nov. 9, 1983), citing *State v. Wildman*, 145 Ohio St. 379, 61 N.E.2d 790 (1945) and *Shupp v. Farrar*, 85 Ohio App. 366, 88 N.E.2d 924 (6th Dist.1949). Beyond the discussion at the May 13 status conference, however, appellant did not move the trial court to hold a pre-trial competency hearing or request a voir dire competency examination. Nor did appellant raise an objection to L.A.'s testimony at trial. We therefore review this claim for plain error. *State v. Laws*, 12th Dist. Clermont No. CA87–12–097, unreported, 1988 WL 75354, *1 (July 18, 1988); *State v. Jackson*, 8th Dist. Cuyahoga No. 79871, 2002–Ohio–2137, ¶ 13. Absent an objection to the testimony of the witness, we must determine whether the court's failure to conduct a voir dire examination of L.A.'s competency was so obvious and prejudicial as to amount to plain error. *See, State v. Kinney*, 35 Ohio App.3d 84, 86, 519 N.E.2d 1386 (1st Dist.1987).

{¶ 22} Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn*, 5th Dist. No.2008–CA–00137, 2009–Ohio–1688, citing *State v. Morales*, 10 Dist. Nos. 03–AP–318, 03–AP–319, 2004–Ohio–3391, at ¶ 19 (citation omitted). The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Barnes, supra, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 23} We find the instant case distinguishable from *Kinney, supra*, in which the appellate court determined the trial court should have inquired into a child victim's "capacity to receive just impressions of the facts and to relate them truly, and that the failure to do so was error." 35 Ohio St.3d at 86. In the instant case, appellee established by expert testimony L.A. is a developmentally-disabled adult and suffers a personality disorder. Nevertheless, there was no indication L.A. could not give a correct account of the incident and she testified she knew the most important thing about court is "to tell the truth," therefore satisfying an

"inquiry [ ] generally part of the voir dire of a witness to determine competency." *State v. Miller*, 44 Ohio App.3d 42, 44–45, 541 N.E.2d 105, 108–09 (6th Dist.1988). As in *Miller*, we note L.A. was able to testify to the sexual assault clearly and concisely and there is no indication she did not appreciate the necessity of providing a true account of the sexual assault; so too were her answers adequately responsive and she did not appear to be overtly confused or illogical. *See, State v. Barnett*, 3rd Dist. Defiance No. 4–98–14, 1999 WL 180830, *6 (Mar. 16, 1999), citing *Miller, supra*, 44 Ohio App.3d 42 at paragraph three of the syllabus.

{¶ 24} The Ohio Supreme Court has noted that a person who suffers from "some unsoundness of mind" can still be competent to testify if he "is able to correctly state matters which have come within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath." *Wildman* at paragraph three of the syllabus. In this case, L.A. suffered from a mental disability which did not affect her ability to receive just impression of facts and relate them truthfully. *See, State v. Freeze*, 12th Dist. Butler No. CA2011–11–209, 2012–Ohio–5840.

{¶ 25} We conclude L.A. was a competent witness and the trial court did not err in failing to voir dire her. Appellant's first assignment of error is overruled.

*State v. Johnson*, 2015 WL 1960568, at *3-5.

[A]ppellant argues the trial court's decision to exclude alleged DNA evidence of another individual was an abuse of discretion. We disagree.

{¶ 33} On October 30, 2013, one of appellant's attorneysFN2 filed a motion in limine and for an in-camera hearing regarding the admissibility of alleged DNA evidence of a male other than appellant found on the fitted sheet. The trial court requested transcripts of L.A.'s statements and appellant's statements to determine any possible relevance of the DNA report. At the status conference on May 13, 2014, the trial court determined the evidence was inadmissible. We are unable to find any proffer of this evidence in the record and neither party points to any such proffer. We are thus left to determine the admissibility of "evidence of an unknown male's DNA on bedsheets." (Appellee's Brief, 12). Appellant states this evidence "did not include semen." (Appellant's brief, 18).

FN2: Appellant had at least four succeeding trial counsel, each of whom moved to withdraw; appellant was ultimately represented by Assistant Ohio Public Defender McVay at trial.

{¶ 34} We note the trial court's ruling at the status conference was preliminary. We are also unable to find in the trial record where the error was preserved, if at all. "In general, the ruling on a motion in limine does not preserve the record on appeal and an appellate court need not review the ruling unless the claimed error

is preserved by an objection at trial." *State v. Pyo*, 5th Dist. Delaware No. 04CAA01009, 2004–Ohio–4768, ¶ 19, citing *State v. Grubb*, 28 Ohio St.3d 199, 503 N.E.2d 142 (1986), paragraph two of the syllabus; *State v. Leslie*, 14 Ohio App.3d 343, 344, 471 N.E.2d 503 (2nd Dist.1984); *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988), paragraph three of the syllabus; *State v. Maurer*, 15 Ohio St.3d 239, 259, 473 N.E.2d 768 (1984).

{¶ 35} Our standard of review in this case is therefore plain error. Criminal Rule 52(B) provides that "plain errors or defects effecting substantial rights may be noticed although they were not brought to the attention of the court." In order to prevail under a plain error analysis, appellant bears the burden of demonstrating the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Simmons*, 5th Dist. Stark No.2001CA00245, 2002–Ohio–3944, at ¶ 11, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph 3 of the syllabus; *State v. D'Ambrosio*, 67 Ohio St.3d 185, 191, 1993–Ohio–170, 616 N.E.2d 909.

{¶ 36} We review the admission or exclusion of relevant evidence for an abuse of discretion. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶ 37} We will not speculate what this evidence might have consisted of; based solely upon appellant's contention here—someone's DNA on a bedsheet—the admission of such evidence would violate Ohio's rape shield law, which excludes reputation, opinion, and specific-acts evidence of a victim's alleged sexual history unless an exception applies. R.C. 2907.02(D); R.C. 2907.05(E). Appellant's summary argument does not include any exception under which such evidence would be relevant or admissible. The trial court did not abuse its discretion in excluding this evidence.

{¶ 38} Appellant's [] assignment of error is overruled.

*Id.* at *5-6.

Because the state appellate court reviewed Petitioner's claims for plain error only based on his failure to object, Petitioner has waived claims five and nine for review in these proceedings. *See Norton v. Sloan*, No. 1:16-cv-854, 2017 WL 525561, at *12 (N.D. Ohio Feb. 9, 2017) (citing *Durr v. McLaren*, No. 15-1346, 2015 WL 5101751, at *2 (6th Cir. Aug. 28, 2015)). The Sixth Circuit has held that Ohio's contemporaneous-objection rule constitutes an adequate

and independent state ground to preclude federal habeas review. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334-35 (6th Cir.) (citation omitted), *cert. denied sub nom. Wogenstahl v. Robinson*, 568 U.S. 902 (2012); *Awkal v. Mitchell*, 613 F.3d 629, 648-49 (6th Cir. 2010) *cert. denied*, 562 U.S. 1183 (2011). The state appellate court's plain error review does not constitute a waiver of the state's procedural default rules. *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006), *cert. denied sub nom. Keith v. Houk*, 549 U.S. 1308 (2007). Moreover, an appellate court's alternative ruling on the merits does not remove the procedural default. *See Teitelbaum v. Turner*, No. 2:17-cv-583, 2018 WL 2046456, at *21 (S.D. Ohio May 2, 2018) (citing *Conley v. Warden, Chillicothe Corr. Inst.*, 505 F. App'x 501, 506 (6th Cir. 2012) (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998)).

### 3. Post-Conviction Proceedings

Petitioner has waived other claims he now presents for review by failing properly to present them in state post-conviction proceedings. For example, in claim eleven, Petitioner asserts that he was denied the right to a fair trial, compulsory process, confrontation, and the effective assistance of counsel because his attorney failed to investigate and subpoena favorable witnesses and records, failed to present an alibi defense, and failed to consult with Petitioner during pre-trial negotiations. In claim twelve, Petitioner asserts that he was denied the effective assistance of counsel, because his attorney failed to provide him with a copy of his case file and failed to consult with him during plea negotiations. In claim fourteen, Petitioner asserts, *inter alia*, that he was denied the effective assistance of counsel during plea negotiations. Petitioner raised these claims in his second, October 21, 2015 petition for post-conviction relief. However, the state appellate court affirmed the trial court's dismissal of that action for failure to meet the

requirements of Ohio Revised Code § 2953.23 for consideration of a successive post-conviction petition:

> This is Johnson's second petition for post-conviction relief. The trial court determined it did not have jurisdiction to entertain Johnson's second petition for post-conviction relief pursuant to R.C. 2953.23(A)(1). R.C. 2953.23 states:
>
> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:
>
> (1) Both of the following apply:
>
> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

{¶ 23} In Johnson's first and second petitions for post-conviction relief, the trial court noted Johnson raised a claim for ineffective assistance of counsel. The trial court determined Johnson did not raise any arguments based on new facts or on a new federal or state right as required by R.C. 2953.23(A)(1)(a). The trial court next determined that Johnson failed to demonstrate by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted pursuant to R.C. 2953.23(A)(1)(b).

{¶ 24} A review of Johnson's arguments on appeal supports the trial court's determination that Johnson does not point the court to new facts or a new federal or state right upon which to allow Johnson to succeed on a successive petition for post-conviction relief. Further, Johnson has not directed this court to any evidence that but for constitutional error, no reasonable fact finder would have found Johnson guilty of rape. Upon our review of Johnson's arguments and the trial

> court's decision, we find the trial court did not abuse its discretion to deny Johnson's successive petition for post-conviction relief.

*State v. Johnson*, No. 15 CAA 11 0092, 2016 WL 1175979, at *4-5 (Ohio App. 5th Dist. Mar. 21, 2016). Because the appellate court refused to address the merits of Petitioner's claims for failure to meet the requirements for the filing of a successive post-conviction petition, Petitioner has procedurally defaulted these claims for review. *See, e.g., Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013), *cert. denied sub nom. Moore v. Robinson*, 571 U.S. 1077 (2013); (petitioner procedurally defaulted claim where he could not meet the requirements for the filing of a successive post-conviction action under Ohio Rev. Code § 2953.23); *Wright v. Lazaroff*, 643 F.Supp.2d 971, 998 (S.D. Ohio 2009) (same).

Petitioner likewise did not preserve claims eleven and twelve through the filing of his first post-conviction petition, as the trial court denied that action as barred under Ohio's doctrine of *res judicata*:

> [T]he defendant contends that his trial counsel incorrectly prepared a subpoena for records, and that error – according to the defendant – hampered the defendant's ability to pursue any alibi defense. The 5/13/14 subpoena that defendant cites is, however, part of the trial-court record, and the defendant could readily have argued in his direct appeal that that subpoena was defective. The subpoena was presumably intended, as defendant claims, to establish an alibi defense. Its presence in the record could have readily alerted the defendant's appellate counsel to the possibility of an alibi defense, and trial counsel's decision not to pursue that defense – and to argue instead that any sexual conduct at issue in this case was consensual – could have been challenged in the direct appeal based on the trial-court record. Given the compelling evidence at trial that the defendant was in fact present at the crime scene and did in fact engage in sexual conduct with the victim, though, the notion that an alibi defense ought to have been raised is specious at best. In any event, the issue of trial counsel's choice to forgo that defense is part of the record and could have been challenged in the direct appeal.
>
> . . . [T]he defendant argues that his trial counsel ought to have more aggressively challenged the mental health of the alleged victim. . . [and] focuses on defense counsel's decision at trial to forgo the opportunity to present additional expert testimony about that issue. The mental health of the allged victim was, though,

addressed on the record, as even the pages of trial transcript attached to the defendant's post-conviction petition indicate. See, e.g., page 353 of the trial transcript (quoting an on-the-record discussion about "the right to have a mental evaluation of a victim" and "the right to have an independent evaluation done"); page 341 of the trial transcript (quoting a mid-trial discussion about the victim's "IQ" and her "co-dependent personality disorder"); page 567 of the trial transcript (quoting attorney McVay's closing argument in which he noted the alleged victim's "IQ of 56").

Likewise, the defendant's trial brief filed on 5/13/14 before the trial began notes that two of the rape charges at issue in the case required the prosecution to prove that a "mental or physical condition" of the alleged victim had affected her ability to resist or consent to the defendant's sexual conduct. In short, the mental health of the alleged victim was woven deeply into the trial-court record, and any appellate challenges to defense counsel's trial-level handling of that issue could have been raised in the direct appeal following the trial. (And indeed that particular ineffective-assistance claim – with a focus on defense counsel's handling at trial of the victim's alleged mental-health limitations — is in fact the very ineffective-assistance claim that attorney Workman has raised in the defendant's appeal, making the issue all-the-more-inappropriate one for the defendant to raise at the same time in this post-convcition proceeding.)

(*Judgment Entry Denying the Defendant's 2/26/15 Post-Conviction Petition*, ECF No. 22-2, PAGEID # 1394-95.) Further, the state appellate court issued a Judgment Entry striking Petitioner's appeal because he did not sign it, and it had been signed by a non-attorney, for unauthorized practice of law. (ECF No. 22-3, PAGEID # 1449-50.) Moreover, Petitioner failed to file a timely appeal to the Ohio Supreme Court. He may no longer do so, as Ohio does not permit delayed appeals in post-conviction proceedings. Ohio Supreme Court Rule of Practice 7.01(A)(4)(c). The state courts have not been provided the opportunity to enforce this procedural rule, due to the nature of Petitioner's procedural default. For all of these reasons, Petitioner has procedurally defaulted habeas corpus claims eleven and twelve. *See Johnson v. Turner*, No. 2:14-cv-01908, 2016 WL 6963177, at *6 (S.D. Ohio Nov. 29, 2016) (petitioner procedurally defaulted his claims by failing to file a timely appeal to Ohio Supreme Court, when the Ohio Supreme Court does not permit the filing of a delayed appeal).

24

Petitioner asserted that he had been denied the effective assistance of counsel during plea negotiations in his March 3, 2016 Motion for Resentencing Based on a Void and Voidable Judgment. (ECF No. 22-4, PAGEID # 2023.) The state appellate court determined that Petitioner premised this claim on facts outside of the record and therefore such a claim could properly be raised in post-conviction proceedings. Petitioner, however, had already filed two such actions, and could not meet the requirements for consideration of the claim in an untimely and successive post-conviction petition. (*Opinion*, ECF No. 22-4, PAGEID # 2299-2300.) Thus, Petitioner has failed to preserve any such claim for review in these proceedings.

In summary, Petitioner has waived all of his claims, with the exception of habeas corpus claim six. He may, however, still secure review of his claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges.

"'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.), *cert. denied*, 543 U.S. 989 (2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself

and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), *cert. denied sub nom. Hartman v. Bobby*, 554 U.S. 924 (2008).

As cause for his procedural default, Petitioner asserts that he was denied the effective assistance of appellate counsel. Petitioner asserted in Rule 26(B) proceedings that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of prosecutorial misconduct based on the known presentation of perjured testimony, judicial misconduct due to the trial court's alleged participation in racially discriminatory and biased remarks, and the denial of the effective assistance of trial counsel. (*See Judgment Entry*, ECF No. 2-2, PAGEID # 1080-81.) The state appellate court rejected these claims as follows:

> The Ohio Supreme Court has determined the two-prong analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) is the appropriate standard for evaluation of a claim of ineffective assistance of appellate counsel. *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996).

> To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

> "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690. Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

\*\*\*

> [A]ppellant argues his convictions were obtained upon the basis of "perjured testimony" and points to a number of inconsistencies in the victim's testimony in

26

the record. Appellant argues appellee thus used "known perjured testimony" to obtain the convictions. We disagree.

Inconsistencies in the victim's testimony are not "perjury." Perjury is a criminal offense defined in R.C. 2921.11(A) as: "No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material." Each example of inconsistent testimony cited by appellant arises from the victim's multiple statements given at different times regarding what occurred during the sexual assaults. The truth or falsity of each of these statements is thus known only to the victim and appellant. Pursuant to R.C. 2921.11(e), "[n]o person shall be convicted of a violation of this section where proof of falsity rests solely upon contradiction by testimony of one person other than the defendant." Thus it is not accurate to refer to the challenged statements as "perjury."

The inconsistent statements made by the victim were before the trier of fact and could be weighed by the trier of fact in determining her credibility. Appellant argues, though, that appellee knowingly used perjured testimony to obtain the convictions. As we just explained, inconsistencies in a witness' testimony go to the witness' credibility but do not necessarily establish the criminal offense of perjury. Appellant asks us to make a further unsupported conclusion and find the prosecutor committed misconduct.

Appellant argues the prosecutor knowingly elicited false testimony from the victim because details of her trial testimony varied from details of her statements to investigators. The knowing use of false testimony may be prosecutorial misconduct if certain elements are established. The Tenth District Court of appeals has cited federal courts in describing the test for prosecutorial misconduct under these circumstances. *See, Columbus v. Joyce,* 10th Dist. Franklin No. 00AP-1486, 2001-Ohio-3989; *State v. Young,* 10th Dist. Franklin No. 05AP-641, 2006-Ohio-1156. "The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Lochmondy,* 890 F.2d 817, 822 (C.A.6, 1989). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois,* 360 U.S. 264, 269 (1959). In order to meet the test for prosecutorial misconduct under these circumstances, the defendant must show that: (1) the statement was false; (2) the statement was material; and (3) the prosecutor knew it was false. *United States v. Griley,* 814 F.2d 967, 971 (C.A.4, 1987). Even when a prosecutor engages in misconduct, however, the reviewing court should not reverse the conviction if the error produced is harmless. *See United States v. Young,* 470 U.S. 1, 13 (1985), n.13; *Joyce, supra,* 2001-Ohio-3989 at *8.

As we have already discussed, appellant has not established the falsity of the victim's challenged statements. The victim in this case is a mentally disabled

adult with an IQ of 56. *Johnson, supra*, 2015-Ohio-1676 at ¶ 2. Nevertheless, "*
* * [she] was able to testify to the sexual assault clearly and concisely and there is
no indication she did not appreciate the necessity of providing a true account of
the sexual assault; so too were her answers adequately responsive and she did not
appear to be overtly confused or illogical." *State v. Johnson, supra*, 2015-Ohio-
1676, at ¶ 23, citing *State v. Barnett*, 3rd Dist. Defiance No. 4-98-14, 1999 WL
180830, *6 (Mar. 16, 1999), citing *Miller, supra*, 44 Ohio App.3d 42 at paragraph
three of the syllabus. Appellant infers from the inconsistent statements such as
the offender picked her up and placed her on the bed, versus the offender pushed
her onto the bed, that one of these statements is false. With both statements
before the jury, however, the inconsistencies are simply a factor to be weighed in
evaluating the victim's credibility.

Appellant summarily claims some of the inconsistencies were "material," but the
perjury statute defines the term as "[a] falsification is material * * * if it can affect
the course or outcome of the proceeding. R.C. 2921.11(B). None of the
inconsistencies cited by appellant go to the elements of the offenses, and even if
the factfinder had disregarded all of the conflicting statements, sufficient evidence
remained to support appellant's convictions. Appellant has not demonstrated the
outcome of the proceedings would have been different absent the challenged
statements.

Finally, appellant has not demonstrated the prosecutor knew any of the statements
were "false" especially in light of the fact that all of the challenged statements
were before the jury.

Appellant's [] assignment of error is overruled because he has not established
prosecutorial misconduct.

. . . [A]ppellant argues the trial judge should have been disqualified on the basis of
alleged racially discriminatory remarks. We disagree.

We note appellant has attached only a portion of the discussion in which the
allegedly inflammatory remarks were made. During a pretrial, in the context of a
discussion of appropriate terms to be used during trial regarding the victim's
mental capacity, the parties discussed the role of bias toward the mentally
disabled during voir dire. The judge referred to an analogous trial experience in
which counsel used racial epithets. The record does not demonstrate the judge
used racial epithets toward appellant or toward anyone else in the courtroom; his
point was that the use of inappropriate racial epithets by counsel led to a
discussion whether jurors should be polled as to their attitudes and biases.

Appellant argues, though, the trial judge should have been disqualified because
"the racial remarks were demeaning and directed at the appellant," a statement not
supported by the record. "A judge is presumed to follow the law and not to be
biased, and the appearance of bias or prejudice must be compelling to overcome

these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5.

Evidence of racial bias cannot be inferred but must be clearly demonstrated in the record:

> Allegations of racial bias are among the most serious and damaging claims that can be directed at a judge, since such allegations, if true, would not only constitute a violation of the judge's oath of office and the Code of Judicial Conduct, see R.C. 3.23 and Canon 3(B)5) of the Code of Judicial Conduct, but also would strike at the very heart of the integrity of the judiciary. In order to warrant a judge's disqualification, these claims must be demonstrated by clear evidence that establishes the existence of bias.

> *In re Disqualification of Cunningham*, 100 Ohio St.3d 1216, 2002-Ohio-7470, 798 N.E.2d 4, ¶ 2.

Appellant points to no remark directed to him and no ruling by the judge reflecting any racial bias. Appellant has thus provided "no evidence, beyond speculation, to support his assertions that [the trial court's] decisions are the product of bias and prejudice, racial or otherwise." *Id.*; *see also, In re Disqualification of Donofrio*, 135 Ohio St.3d 1253, 2012-Ohio-6338, 986 N.E.2d 13, ¶ 5.

We further note the Chief Justice of the Supreme Court of Ohio, or her designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced. *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442, 377 N.E.2d 775 (1978). "We conclude that R.C. 2701.03 provides the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced." *Jones v. Billingham*, 105 Ohio app.3d 8, 11, 663 N.E.2d 657 (2nd Dist. 1995). It is not within the purview of the court of appeals to void a trial court judgment on the basis of disqualification of a trial court judge. *Furlan v. Saloka*, 8th Dist. Cuyahoga No. 83186, 2004-Ohio-1250, at ¶ 19.

\*\*\*

. . . [A]ppellant argues he received ineffective assistance of trial counsel because counsel did not adequately challenge the victim's "perjured" testimony and did not seek disqualification of the trial judge. We disagree.

As stated supra, to succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test: that trial counsel acted incompetently and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See, Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052 (1984). In light of our findings in appellant's first and second proposed assignments of error, appellant cannot show trial counsel acted incompetently in failing to raise meritless arguments.

(*Judgment Entry*, ECF No. 22-2, PAGEID # 1078-89.)

This Court must consider Petitioner's claim of the denial of the effective assistance of counsel *de novo* when determining whether a petitioner can establish cause for a procedural default. *See Hively v. Warden*, No. 2:17-cv-222, 2018 WL 722864, at *7 (S.D. Ohio Feb. 5, 2018) (citing *Hall v. Vasbinder*, 563 F.3d 222, 236–37 (6th Cir. 2009) ("An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel. The latter must meet the higher AEDPA standard of review, while the former need not.")).

## C. *De Novo* Review of Assertion of Ineffective Assistance of Counsel

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S. Ct. 680 (2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted); citing *Strickland*, 466 U.S. at 687), *cert.*

*denied*, 135 S. Ct. 122 (2014). To make such a showing, a petitioner must overcome the "strong

[ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 687. "To

avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v.*

*Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259,
> 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Burger v. Kemp*, 483 U.S. 776, 107
> S.Ct. 3114, 97 L.Ed.2d 638 (1987). . . . Counsel's failure to raise an issue on
> appeal amounts to ineffective assistance only if a reasonable probability exists
> that inclusion of the issue would have changed the result of the appeal. *Id.* . . . . .
> The attorney need not advance every argument, regardless of merit, urged by the
> appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d
> 987 (1983) ("Experienced advocates since time beyond memory have emphasized
> the importance of winnowing out weaker arguments on appeal and focusing on
> one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at \*28 (S.D.

Ohio Mar. 6, 2013). Factors to be considered in determining whether a defendant has been

denied the effective assistance of appellate counsel include:

> (1) Were the omitted issues "significant and obvious"?

> (2) Was there arguably contrary authority on the omitted issues?

> (3) Were the omitted issues clearly stronger than those presented?

> (4) Were the omitted issues objected to at trial?

> (5) Were the trial court's rulings subject to deference on appeal?

> (6) Did appellate counsel testify in a collateral proceeding as to his appeal
> strategy and, if so, were the justifications reasonable?

> (7) What was appellate counsel's level of experience and expertise?

> (8) Did the petitioner and appellate counsel meet and go over possible issues?

31

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999) (citations omitted).

Petitioner has failed to meet this standard here. As the state appellate court pointed out,

nothing in the record supports Petitioner's assertion that the alleged victim lied or that the

prosecutor knowingly submitted perjured testimony. The trial transcript likewise fails to support

Petitioner's claim of judicial bias. (*See Transcript*, ECF No. 23, PAGEID # 4248-50.)

Therefore, Petitioner cannot establish the denial of the effective assistance of counsel under the

two-prong *Strickland* test. Because Petitioner has failed to establish a claim for ineffective

assistance of appellate counsel, he cannot establish cause for his procedural defaults.

**D.   Actual Innocence**

Petitioner next asserts that he is actually innocent and the victim of a manifest

miscarriage of justice. (*See Reply*, ECF No. 51, PAGEID # 5701-07.) In support, Petitioner

refers to evidence never presented to the jury indicating that the DNA of an unknown male had

been found on the bedsheets of the alleged victim, as well as the lack of his DNA on the alleged

victim's underwear. Petitioner also challenges the credibility of the alleged victim, arguing that

she made prior inconsistent statements and the trial court improperly failed to make a

competency determination.

The United States Supreme Court has held that a claim of actual innocence may be raised

"to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional

claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a

constitutional violation has probably resulted in the conviction of one who is actually innocent, a

federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Schlup*, 513 U.S. at 317. However, the actual innocence claim is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception to procedural default allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005). The Sixth Circuit explained this exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S. Ct. 851, 130 L.Ed. 2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S. Ct. 851, 130 L.Ed. 2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S. Ct. 851, 130 L.Ed. 2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L.Ed. 2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S. Ct. 851, 130 L.Ed. 2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S. Ct. 851, 130 L.Ed. 2d 808.

*Souter,* 395 F.3d at 589–90 (footnote omitted). "The Sixth Circuit has recognized the circuits are split on whether the 'new evidence' required under *Schlup* includes only newly-discovered evidence that was not available at trial, or encompasses any evidence not presented during trial." *Fortson v. Eppinger,* No. 15-cv-2078, 2016 WL 11259032, at *33 (N.D. Ohio Nov. 21, 2016) (citing *Cleveland v. Bradshaw,* 693 F.3d 626, 633 (6th Cir. 2012)).

In this case, the testimony of the alleged victim upon which Petitioner relies does not involve "new evidence" of his actual innocence. Petitioner had the opportunity to challenge the alleged victim's credibility at trial, and the record reflects that defense counsel did, in fact, cross-examined the alleged victim regarding her prior inconsistent statements to police. (*Transcript,* ECF No. 23, PAGEID # 4497-4514.) Additionally, the state appellate court determined that the alleged victim was competent to testify. *State v. Johnson,* 2015 WL 1960568, at *5. This finding is presumed to be correct, 28 U.S.C. § 2254(e), and the trial transcript supports the appellate court's determination. Further, the state appellate court affirmed the trial court's refusal to permit admission of evidence reflecting the presence an unknown male's DNA on the bedsheets of the alleged victim. *Id.* at *5-6. This evidence did not include semen. *Id.* at *5. In any event, neither the lack of Petitioner's DNA on the alleged victim's underwear nor the unknown male's DNA on the alleged victim's bedsheets satisfies the high standard required to establish a gateway claim of actual innocence. Upon an independent review of the entire record, the Court does not deem this case to be so rare and extraordinary as to relieve Petitioner of his procedural defaults.

## III.   CLAIM SIX: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

### A.   AEDPA Standard of Review

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the

Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United

States Supreme Court has described the AEDPA as "a formidable barrier to federal habeas relief

for prisoners whose claims have been adjudicated in state court" and emphasized that courts

must not "lightly conclude that a State's criminal justice system has experienced the 'extreme

malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20

(2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559

U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-

court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal

quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and

forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated

on the merits in State court proceedings" unless the state court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to

be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub nom. Coley v. Robinson,* 134 S.Ct. 513 (2013). The Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,] or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405. 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id.* at 748-49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Petitioner asserts that he was denied the right to the effective assistance of counsel, because his attorney failed to investigate or request determination of the alleged victim's competency and failed to object or move to strike her testimony from the record. The state appellate court rejected this claim, reasoning as follows:

> [A]ppellant argues he received ineffective assistance of counsel because trial counsel failed to properly raise the issue of L.A.'s potential incompetency as a witness. We disagree.
>
> {¶ 27} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the circumstances, the. challenged action 'might be considered sound trial strategy.'" *Id*. at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶ 28} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id*. at 690.

{¶ 29} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

{¶ 30} In the instant case, appellant cites counsel's failure to move for a competency hearing of L.A. and to object to her testimony as examples of ineffective assistance. We have already determined in our discussion of the first assignment of error that L.A. was a competent witness, however. Appellant cannot establish that if counsel properly raised the issue, the outcome would have been different.

{¶ 31} Appellant has therefore failed to establish ineffective assistance of counsel and his second assignment of error is overruled.

*State v. Johnson,* 2015 WL 1960568, at *5.

In addition, as discussed above, the appellate court also found the alleged victim to be competent to testify:

L.A. is a developmentally-disabled adult and suffers a personality disorder. Nevertheless, there was no indication L.A. could not give a correct account of the incident and she testified she knew the most important thing about court is "to tell the truth," therefore satisfying an "inquiry [ ] generally part of the voir dire of a witness to determine competency." *State v. Miller*, 44 Ohio App.3d 42, 44–45, 541 N.E.2d 105, 108–09 (6th Dist.1988). As in *Miller*, we note L.A. was able to testify to the sexual assault clearly and concisely and there is no indication she did not appreciate the necessity of providing a true account of the sexual assault; so too were her answers adequately responsive and she did not appear to be overtly confused or illogical. *See, State v. Barnett*, 3rd Dist. Defiance No. 4–98–14, 1999 WL 180830, *6 (Mar. 16, 1999), citing *Miller, supra*, 44 Ohio App.3d 42 at paragraph three of the syllabus.

{¶ 24} The Ohio Supreme Court has noted that a person who suffers from "some unsoundness of mind" can still be competent to testify if he "is able to correctly

state matters which have come within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath." *Wildman* at paragraph three of the syllabus. In this case, L.A. suffered from a mental disability which did not affect her ability to receive just impression of facts and relate them truthfully. *See, State v. Freeze*, 12th Dist. Butler No. CA2011–11–209, 2012–Ohio–5840.

{¶ 25} We conclude L.A. was a competent witness and the trial court did not err in failing to *voir dire* her.

*State v. Johnson*, 2015 WL 1960568, at \*4-5.

The appellate court's factual finding regarding L.A.'s competence is presumed to be

correct. *See Harvey v. Tambi*, 1:12-cv-3037, 2015 WL 5055470, at \*2 (N.D. Ohio Aug. 26,

2015) (citing *Thompson v. Keohane*, 516 U.S. 99, 108-11 (1995)). Further,

"regardless of whether we would reach a different conclusion were we reviewing the case *de novo*, the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary." *Clear v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (applying 28 U.S.C. § 2254(e) (1)); *see also Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010) (under 28 U.S.C. § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"). This deference must be paid even to state-court factual findings made on appeal. *See Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983).

*Id.*

Here, Petitioner has failed to rebut the presumption of correctness afforded to the state

appellate court's factual finding. Accordingly, Petitioner cannot establish the denial of the

effective assistance of counsel under the two-prong *Strickland* test based on his attorney's failure

to request a competency determination or move to strike the testimony of the alleged victim.

Petitioner's claim six therefore lacks merit.

## IV. DISPOSITION

For the foregoing reasons, it is Petitioner's action is **DISMISSED**.  In addition,

Petitioner's Motion to Request an Evidentiary Hearing (ECF No. 50) and his Motion to Expedite

(ECF No. 57) are **DENIED** as moot.

 

 

**IT IS SO ORDERED.**

 

 

<u>     3-27-2020     </u>

**DATE**

                          **EDMUND A. SARGUS, JR.**
                          **UNITED STATES DISTRICT JUDGE**